UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHSUETTS

| | |
|---|---|
| MEGHAN MARTELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIMEPAYMENT CORP., RICHARD LATOUR, and DOES 1 To 10,<br><br>Defendants. | Civil Action No. 17-11610<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Meghan Martell ("Ms. Martell"), on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendants Timepayment Corp., ("Timepayment"), Richard Latour, and Does 1 to 10 seeking damages based on the failure to pay wages and overtime pay. This is a "collective action" for violations class the Fair Labor Standards Act ("FLSA"), and a class action, pursuant to Fed. R. Civ. P. 23, for violations of Massachusetts Wage Law.

### JURISDICTION

1. This Court has personal jurisdiction over Timepayment because its principal place of business is in Massachusetts.

2. This Court has personal jurisdiction over Mr. Latour and Does 1 to 10 because they performed the wrongful acts described herein in Massachusetts and, on information and belief, reside in Massachusetts.

3. This Court has subject matter jurisdiction over Ms. Martell's claim under

1

the FLSA pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. This Court has subject matter jurisdiction over Ms. Martell's Massachusetts Wage Law claim pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5. Ms. Martell is an individual who resides in Dracut, Massachusetts.

6. Defendant Timepayment Corp. ("Timepayment") is a Delaware company with its principal place of business in Burlington, Massachusetts.

7. Defendant Richard Latour ("Mr. Latour") is an individual who, on information and belief, resides in Massachusetts. At all times material hereto, Mr. Latour was the President and Treasurer of Timepayment and is therefore liable as an employer under Massachusetts Wage Law, and has sufficient control over TimePayment's employment practices to be liable under the FLSA.

8. Does 1 to 10 are individual officers, and/or agents of Timepayment having management of Timepayment, and therefore liable as an employer under Massachusetts Wage Law and/or individuals with sufficient control over TimePayment's employment practices to be liable under the FLSA.

## OVERTIME LAW

9. The FLSA provides, among other things, that employers must pay their employees time and half rate for all time worked in excess of 40 hours per week: "[N]o employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

10. Commissions must be included in calculating the hourly rate from which the time and a half overtime pay is based: "Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or some other basis, and regardless of the method, frequency, or regularity of computing, allocating or paying the commission." 29 CFR 778.117. For example, if "an employee receives, in addition to the earnings computed at the $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13). The employee is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13, plus 6 hours at $6.50, or 40 hours at $13 plus 6 hours at $19.50)." 29 CFR 778.110.

11. Massachusetts Wage Law provides, among other things, that employers must pay their employees time and half rate for all time worked in excess of 40 hours per week: "[No] employer in the commonwealth shall employ any of his employees … for a week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate of not less than one and one half time the regular rate at which he is employed." M.G.L. ch 151 § 1A.

## FACTUAL ALLEGATIONS

12. Timepayment is an equipment leasing company that specializes in leasing equipment to small companies. Timepayment is engaged in interstate commerce.

13. Timepayment has its principal office in Massachusetts, and another office in California.

14. Timepayment employs individuals whose primary duty is use the company's phone systems to perform such duties as making collection calls to customers, and providing customer support ("Call Center Employees").

15. Timepayment pays its non-exempt Call Center Employees an hourly wage.

16. Ms. Martell was employed by Timepayment as a Call Center Employee in its customer debt collection division.

17. Timepayment's offer letter to Ms. Martell explained that "[y]our hourly pay rate is $15.39 per hour, which annualizes to $32,000, plus commission."

18. Ms. Martell, as well as other members of the "FLSA Class" and the "Massachusetts Class," as defined below, regularly worked more than 40 hours per week, for which they were not paid overtime.

19. First, all Timepayment Call Center Employees must swipe a badge when they enter their workspace within the Timepayment building. On information and belief, Timepayment records the time each Call Center Employee enters and leaves his/her workspace.

20. All Call Center Employees must then boot up their computer and open several programs. This process takes several minutes. Only after that time has elapsed are Call Center Employees able to log in to the phone system. Conversely, they must log off the phone before turning their computer system off. The phone system tracks the time during which each employee is logged in to its phone system.

21. Timepayment pays its Call Center Employees based on the time during which they are logged on to the phone system. Timepayment does not pay its Call Center Employees for the time spent booting up and booting down their computers.

22. Accordingly, all Timepayment Call Center Employees are not paid for the time spent booting up and down their computer system. All Call Center Employees should be paid for such time as part of the standard wages. Further, to the extent such amounts bring an employee's work hours to more than 40 hours in a week, such employees should be paid time and a half their hourly rate for any such time

23. More significant, Timepayment has a company-wide "commission" policy for its Call Center Employees engaged in collection work. Timepayment provides monthly targets of amounts expected to be collected by each employee. Timepayment agrees to such commissions, and employees expect such commissions.

24. Timepayment applies a formula based on the dollar amount each employee collects and, if the goals are met, pays the employee a commission, often in the range of $1,000 per month.

25. Timepayment employs this company-wide commission policy as a carrot to encourage its Call Center Employees doing collection work to work more than 40 hours each week.

26. With the full knowledge and encouragement of Timepayment, Call Center employees regularly work more than 40 hours per week in order to meet their targets and earn a commission.

27. Timepayment supervisors send emails to Call Center Employees encouraging them to work extra shifts and weekends so that collection goals will be met.

28. Indeed, Timepayment keeps its call center open on weekends for the very purpose of encouraging its employees to work overtime to meet targets and earn commissions.

29. Many Call Center Employees work between 5 and 10 hours of overtime per week.

30. In an egregious violation of the FLSA and the Massachusetts Wage Act, until recently Timepayment paid its Call Center Employees for only 40 hours of work, regardless of whether they worked overtime or not.

31. Indeed, on information and belief, not until on or about February 2017, did Timepayment begin paying some Call Center Employees an overtime rate of one and a half of their normal hourly wage.

32. On information and belief, Timepayment now uses its phone log in records to calculate overtime. Accordingly, Timepayment has records from which to calculate the hours each Call Center Employee has worked beyond 40 hours each week.

33. Even now that Timepayment has finally begun making overtime payments, however, it continues to use only an employee's actual hours in order to calculate the overtime rate.

34. Timepayment still does not include commissions as earned wages for purposes of calculating overtime payment.

**COLLECTIVE ACTION ALLEGATIONS**

35. With respect to Count I below, Ms. Martell brings this complaint individually and as a nationwide action on behalf of an opt-in class (the "FLSA Class") comprised of all former and current non-exempt Timepayment Call Center Employees

who have worked for Timepayment within the last three years.

36. Ms. Martell is a member of the FLSA Class.

37. Upon information and belief, the FLSA Class consists of more than 150 people.

38. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to the claims under the FLSA for unpaid compensation, liquidated damages, attorneys' fees, and costs.  In addition to Ms. Martell, numerous Timepayment employees are similarly situated with regard to their wages and claims for unpaid wages and damages.  Ms. Martell is representative of those other employees and is acting on behalf of the interests of the FLSA as well as her own in bringing this action.

39. Members of the FLSA Class are known to Timepayment, are readily identifiable, and can be located through Timepayment's payroll records.  These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

40. With respect to Count II below, Ms. Martell brings this complaint individually and on behalf of an opt-out class (the "Massachusetts Class") of former or current non-exempt Call Center Employees who have worked for Timepayment within the last three years.

41. Ms. Martell is a member of the Massachusetts Class.

42. <u>Numerosity</u>: The members of the Massachusetts Class are so numerous that individual joinder of all Massachusetts Class members is impracticable.  On

information and belief, the Massachusetts Class consists of over 100 members. The precise number of Massachusetts Class members and their addresses may be ascertained from Timepayment's payroll records. Massachusetts Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

43. <u>Commonality</u>: This action involves common questions of law and fact, which predominate over any questions affecting individual Massachusetts Class members. Common questions of law and fact, include, but are not limited to, whether Timepayment's practice of beginning and ending timekeeping only when a Call Center Employee logs into or out of his/her phone system, and whether Timepayment's practice of not paying hourly wages to Call Center Employees who work more than 40 hours per week, violate the Massachusetts Wage Act.

44. <u>Typicality</u>: Ms. Martell's claims are typical of the claims of the Massachusetts Class because she and the other members of the class were subjected to the same employment practices of Timepayment, namely beginning and ending timekeeping only when she logged into or out of her phone system; and, more significantly, failing to pay her overtime.

45. <u>Adequacy of Representation</u>: Ms. Martell is an adequate Massachusetts Class representative because her interests do not conflict with the interests of the other members of the Massachusetts Class she seeks to represent; she has retained counsel competent and experienced in class action litigation; and she intends to prosecute this action vigorously.

46. <u>Superiority</u>: A class action is superior to any other available means for the

fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Ms. Martell and the other members of the Massachusetts Class are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the Massachusetts Class members to individually seek redress for Timepayment's wrongful conduct.  Even if the class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

47. Additionally, class certification is appropriate because login times are similar for all Massachusetts Class members, and the length of any overtime work is readily accessible from Timepayment's own employee call log system, which tracks the time each Massachusetts Class member was on his/her telephone.

## COUNT I
## Fair Labor Standards Act

48. Ms. Martell incorporates all other allegations in the complaint.

49. The wage provisions in the FLSA apply to Timepayment and protect Ms. Martell and the FLSA Class.

50. Timepayment failed to pay Ms. Martell wages and overtime wages to which she was entitled under the FLSA.

51. Timepayment's violations of the FLSA have been willful and intentional.

52. Timepayment did not make a good faith effort to comply with the FLSA with respect to its compensation of Ms. Martell and the members of the FLSA Class.

53. Because Timepayment's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

54. As a result of Timepayment's violations of the FLSA, Ms. Martell and the members of the FLSA Class have been damaged by being denied wages and overtime wages in accordance with the FLSA in amounts to be determined at trial, and they are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201, *et seq.*

## COUNT II
### Massachusetts Wage Law

55. Ms. Martell incorporates all other allegations in the complaint.

56. The wage and overtime provisions set forth in Massachusetts Wage Law, including M.G.L. ch. 149 § 148 and ch. 151, § 1A, apply to Timepayment and protect the Massachusetts Class.

57. Timepayment failed to pay Ms. Martell and members of the Massachusetts Class wages and overtime wages to which they are entitled.

58. To the extent it may be required, Ms. Martell has sought a "right to sue" letter with respect to the conduct alleged herein from the Massachusetts Attorney General's Office, and will amend her complaint once the letter has been received.

59. As a result of Timepayment's violations of Massachusetts Wage Law, Ms. Martell and the members of the Massachusetts Class have suffered damages by being denied wages and overtime wages in accordance with Massachusetts Wage Law in amounts to be determined at trial, and they are entitled to recovery of such amounts,

treble damages, prejudgment interest, attorneys' fees, costs, and other compensation.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Martell request that the Court:

a. Designate this action as a collective action pursuant to 29 U.S.C. § 216(b) and direct prompt notice be provided to all potential members of the FLSA Class in order to allow them to "opt in" to this action;

b. Certify the Massachusetts Class as a class;

c. Award members of the FLSA Class and the Massachusetts Class damages to be determined at trial, including, but not limited to liquidated damages under the FLSA and treble damages under Massachusetts Wage Law, together with attorneys' fees and costs (as provided for under the FLSA and Massachusetts Wage Law) and pre-judgment and post-judgment interest; and

d. Grant such other relief as the court may deem just and proper.

## JURY DEMAND

Ms. Martell demands a trial by jury on all issues so triable.

Dated: August 28, 2017

        MEGHAN MARTELL,
        Individually and on behalf of all others
        similarly situated,
        By her attorneys,

        /s/ Josh Gardner
        Josh Gardner (BBO No. 657347)
        Nicholas J. Rosenberg (BBO No. 657887)
        GARDNER & ROSENBERG P.C.
        One State Street, Fourth Floor
        Boston, MA 02109
        Tel: 617-390-7570
        josh@gardnerrosenberg.com